**Donald J. DEVINE, Director, Office of Personnel Management, Petitioner,**

v.

**Joseph M. PASTORE, Jr., Arbitrator, National Treasury Employees Union, and James Estrella, Respondents.**

No. 82–1716.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 29, 1983.

Decided April 20, 1984.

John M. Rogers, Atty., Dept. of Justice, Washington, D.C., for petitioner. J. Paul McGrath, Asst. Atty. Gen., Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed, William Kanter and Carlene V. McIntyre, Attys., Dept. of Justice, Washington, D.C., were on the brief, for petitioner. Wendy M. Keats and Howard S. Scher, Attys., Dept. of Justice, Washington, D.C., also entered appearances for petitioner.

Richard S. Edelman, Washington, D.C., for respondents. Robert M. Tobias, John F. Bufe, Lois G. Williams and Sharyn Danch, Washington, D.C., were on the brief, for respondents.

Before BORK and SCALIA, Circuit Judges, and WILLIAMS,* Senior District Judge.

Opinion for the Court filed by Circuit Judge SCALIA.

SCALIA, Circuit Judge:

Petitioner, Director of the Office of Personnel Management, seeks review of an order of arbitrator Joseph M. Pastore, Jr., mitigating the penalty of removal imposed by the Customs Service against James Estrella, a Customs Inspector, for the theft of merchandise entrusted to him. Because we find that the arbitrator erred in making his own assessment of an appropriate penalty rather than merely determining whether the penalty imposed by the agency was arbitrary or capricious; and may also have committed the error of considering the disciplinary factors set forth in the collective bargaining agreement controlling, to the exclusion of other factors permitted by federal personnel law; we grant the petition for review and remand the case to the arbitrator.

## I

James Estrella was a Customs Inspector assigned to the Maersk Terminal Wharf, Port Newark, New Jersey. He had been a Customs Inspector for four of his nearly thirty years of government employment. Customs Inspectors are responsible for the administration and enforcement of the laws governing the import and export of merchandise; they operate independently, under only limited general supervision. On August 29, 1980, security officers for Maersk Lines observed Estrella remove from the cargo area a shirt worth approximately $14 at retail and place it in his car. Following an investigation, and Estrella's response to the charges, the Customs Service issued an order removing Estrella from his position, effective April 9, 1981.

* The Hon. David W. Williams, Senior District Judge for the Central District of California, sitting by designation pursuant to 28 U.S.C. § 294(d) (1982).

The national collective bargaining agreement negotiated between the United States Customs Service and the National Treasury Employees Union ("NTEU"), Estrella's collective bargaining representative, contains a grievance procedure and a procedure for submitting unresolved grievances to arbitration. It also contains provisions relating to the discipline of employees and the factors management should weigh in determining an appropriate penalty. Estrella filed a grievance relating to his dismissal on April 20, 1981. When this could not be resolved informally, the NTEU invoked arbitration on his behalf. The parties selected Joseph M. Pastore, Jr., to serve as arbitrator.

Both the Customs Service and the NTEU introduced evidence concerning whether Estrella had taken the shirt, and argument concerning whether the penalty of removal was appropriate. Both parties[1] agreed that the appropriateness of the penalty should be judged by the following question which was derived from the contract's discipline terms:

> Was the removal of the grievant in violation of the *contractual requirements for removal* only for such cases as will promote the efficiency of the Service; discipline to be progressive in nature; and like penalties for like offenses and, if so, what shall the remedy be?

In re *Arbitration between the National Treasury Employees Union and the United States Customs Service, Initial Opinion and Award* at 5 (Jan. 26, 1982) (Pastore, Arb.) (emphasis added).

The arbitrator found on January 26, 1982, that Estrella had placed the shirt in his car for his own use, and that although Estrella's actions "did tend to impair the efficiency of the Service," his removal was not consistent with the contractual policies of progressive discipline and like penalties for like offenses. *Id.* at 25. The arbitrator

1. The parties to the arbitration were the NTEU and the Customs Service. The Office of Personnel Management did not intervene until after the arbitrator issued his Initial Opinion and Award.

also found the action inconsistent with his own interpretation of the agency's Table of Offenses and Discipline. *Id.* Accordingly, he mitigated Estrella's discipline to a thirty-one day suspension.

On March 5, 1982, the Office of Personnel Management ("OPM") intervened to request the arbitrator to reconsider. OPM argued, as it has in this court, that the arbitrator erred in failing to apply the "arbitrary, capricious, or clearly erroneous" standard in reviewing the agency's decision. The arbitrator denied OPM's reconsideration request on May 20, 1982. The opinion on reconsideration again reviewed the evidence supporting the penalty and reaffirmed that the removal sanction was not justified under the contractual tests. In re *Arbitration Between the National Treasury Employees Union and the United States Customs Service, Arbitrator's Response to OPM Request for Reconsideration* at 6 (May 20, 1982) (Pastore, Arb.) (hereinafter cited as "Opinion on Reconsideration").

## II

Section 7121 of the civil service law, 5 U.S.C. § 7121(f) (1982), authorizes the Director of the Office of Personnel Management to seek judicial review of the decisions of arbitrators in the same manner as he is empowered by § 7703 to seek review of decisions of the Merit Systems Protection Board ("MSPB"), *id.* at § 7703. The Director may petition for review of those orders having a "substantial impact" on the operation of the civil service system. The granting of such a petition is at the discretion of the court. *Id.* at § 7703(d).[2] Our consideration of this case persuades us that the resolution of the issues it presents can have a substantial impact on civil service law, and the case is therefore appropriate for review. We are faced with the

**2.** The Court of Appeals for the Federal Circuit now has exclusive jurisdiction over these appeals. 5 U.S.C. § 7703(b)(1), (d) (1982). At the time this appeal was filed, however, petitions for review could be made to any court of ap-

question, however, of whether the OPM petition for review is timely.

Section 7703(b) states that a petition for review must be filed within thirty days after the date the petitioner receives notice of the final decision appealed from. As noted above, here OPM did not seek review of the decision in the original arbitration (to which OPM had not been a party), but first intervened and requested the arbitrator to reconsider. This course was followed in reliance upon this court's language in *Devine v. Goodstein,* 669 F.2d 736 (D.C.Cir. 1981), which suggested that OPM must intervene and seek reconsideration before it can petition for review of an arbitrator's decision, just as it must do before petitioning for review of an MSPB decision in a case to which it is not a party. *See* 5 U.S.C. § 7703(d) (1982). The opinion stated that "[b]ecause the Director did not intervene in the matter when it was before the arbitrator, he petitioned the arbitrator for reconsideration *as required by* § 7703(d)." 669 F.2d at 736 (dictum) (emphasis added).

In *Devine v. White,* 697 F.2d 421 (D.C.Cir.1983), decided after this petition for review had been filed, we addressed the issue of the timing of appeals from the decisions of arbitrators, holding that OPM was neither required nor permitted to ask the arbitrator to reconsider his decision, and that such action would not toll the thirty-day limit. *Id.* at 433. Applying that holding to this case would make OPM's June 25, 1982 petition for review of the arbitrator's January 26, 1982 decision out of time. In *Devine v. White,* however, we excused OPM's noncompliance with the time requirements, noting that OPM had acted in reliance upon the "misleading signals" given in *Devine v. Goodstein,* and that its petition was timely when analyzed against that mistaken standard. 697 F.2d at 433. Since the same circumstances exist here, the argument that this petition is out of time must be rejected.[3]

peals in which general venue requirements were met. 5 U.S.C. § 7703(b)(1), (d) (Supp. V 1981).

**3.** OPM intervened and moved for reconsideration on March 5, 1982, more than thirty days after the arbitrator's decision of January 26,

## III

The Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C. (1982)), established alternative procedures for review of agency actions removing employees. An employee has the option of pursuing the Act's appellate procedures by taking his appeal to the MSPB, or he may pursue the negotiated grievance procedures contained in the employee's collective bargaining agreement. 5 U.S.C. § 7121(e)(1) (1982). Estrella initiated the latter procedure by filing a grievance. Grievance procedures, typically culminating in arbitration, and MSPB review differ in many respects. Arbitration is recognized as "faster, cheaper, less formal, more responsive to industrial needs, and more conducive to the preservation of ongoing employment relations." *Devine v. White,* *supra,* 697 F.2d at 435. While undoubtedly hoping to encourage employee selection of the grievance-arbitration process, Congress did not wish that choice to be made on the basis of a predictable difference in substantive outcome. To the contrary, it envisioned a system that would, as between arbitration and MSPB procedures, "promote consistency ... and ... avoid forum shopping." H.R.REP. No. 1717, 95th Cong., 2d Sess. 157, *reprinted in* 1978 U.S.CODE CONG. & AD.NEWS 2723, 2860, 2891 (discussion of burden of proof provisions). This court has previously noted that substantial disuniformity between the review powers of arbitrators and of the MSPB would frustrate congressional intent. *See Local 2578, American Federation of Government Employees v. General Services Administration,* 711 F.2d 261, 265 (D.C.Cir.1983).

One of the areas in which uniformity is required is the standard of review applied by the decisionmaker. The statute itself, 5 U.S.C. § 7121(e)(2), is explicit on the point, stating that in those matters appealable to the MSPB "an arbitrator shall be governed by section 7701(c)(1) of this title, as applicable"—the section setting forth the MSPB's standards of review. In *Local 2578, supra,* in holding that an arbitrator erred by refusing to review an agency's choice of penalties, we said: "The inequity of an arbitrator having less authority than the MSPB to deal with the same adverse action is self-evident; an aggrieved employee would be likely to choose the forum providing the greatest independent review of an adverse decision." 711 F.2d at 265. *Local 2578* involved an arbitrator who had declined to review the appropriateness of a penalty entirely. But its reasoning applies as well to the standard of review, and supports the conclusion not only that the arbitrator's authority can be no less than the MSPB's but also that it can be no greater. In fact, this corollary has even more substantial support, since it is demanded not only by the congressional intent to prevent outcome-related forum shopping, but also by that provision of the Civil Service Reform Act which prohibits any collective bargaining agreement to "affect the authority of any management official of any agency ... to suspend, remove, reduce in grade or pay, or take other disciplinary action against ... employees." 5 U.S.C. § 7106(a)(2)(A). That provision would be violated if an agreement could, by providing for arbitration, alter the test that must be met to support such agency action, making it more rigorous than that which the law (and the MSPB) would provide.[4]

---

1982. The statute, however, measures the time period for appeal from the time OPM "receive[s] notice" of the decision, 5 U.S.C. § 7703(b)(1) (1982), which in this case was February 26, 1982, *see* Affidavit of Naomi J. Miske, Supplemental Brief for Petitioners at 3a, making the March 5, 1982 motion for reconsideration timely under the *Devine v. Goodstein* analysis. Similarly, OPM's June 25, 1982 petition for review of the arbitrator's May 20, 1982 denial of the reconsideration motion is timely in this sense because the OPM did not receive notice of the

arbitrator's denial until May 28, 1982. *See* OPM Petition for Review at 3.

**4.** Subsequent to the argument of this appeal, the Court of Appeals for the Federal Circuit has stated that it "find[s] no support" for the position that "an arbitrator must apply the same standard to mitigation of penalties as that used by the MSPB." *Devine v. Sutermeister,* 724 F.2d 1558, 1565 (Fed.Cir.1983). The statement is dictum, since the court specifically said that it "need not decide whether an arbitrator is al-

■ It is clear that in the present case the arbitrator applied a different (and more intensive) standard of review than would have been applied by the MSPB. In responding to OPM's motion for reconsideration he said:

> The question presented to the Arbitrator was *not*, as OPM contends, whether the adverse action of discharge was within the spectrum of available penalties which might be imposed by the Service nor was the question presented to the Arbitrator, directly, one of testing to determine whether the adverse action imposed upon the grievant was "arbitrary and capricious." Rather, the parties freely solicited the opinion and judgment of the Arbitrator only with respect to the *contractual test* of whether the removal of James Estrella met each of the three conditions of (1) efficiency impairment; (2) like penalty for like offenses; and, (3) progressive discipline as cited in Article 30 of the Agreement.

Opinion on Reconsideration at 6 (emphasis in original). He noted that he had been asked by the parties to "determine whether certain provisions of Article 30 of the Agreement were violated by the Service and 'if so, what shall the remedy be?'" and that his obligation was "morally, to attempt to decide in a manner which is just to the individuals involved while at the same time maintaining productive union-management peace and harmony." *Id.* at 15. This differs from MSPB review in that it constitutes a direct application of the arbitrator's own judgment regarding the appropriate penalty, rather than according what the Board has described as "appropriate deference to the primary discretion which has been entrusted to agency management, not to the Board," *Douglas v.*

*Veterans Administration,* 5 MSPB 313, 328 (1981).

> The Board's role in this process is not to insist that the balance be struck precisely where the Board would choose to strike it if the Board were in the agency's shoes in the first instance; such an approach would fail to accord proper deference to the agency's primary discretion in managing its workforce.... Only if the Board finds that the agency failed to weigh the relevant factors, or that the agency's judgment clearly exceeded the limits of reasonableness, is it appropriate for the Board then to specify how the agency's decision should be corrected to bring the penalty within the parameters of reasonableness.

*Id.* at 332–33. We have approved this standard of review in *Parsons v. United States Department of the Air Force,* 707 F.2d 1406, 1409 (D.C.Cir.1983).

■ The arbitrator's review may also have differed from that which would correctly be applied by the MSPB in that he considered the relevant factors to be those set forth in the NTEU-Customs Service collective bargaining agreement. But if a collective bargaining agreement were able to fix the factors governing discipline, it would "affect the authority of [a] management official of [an] agency ... to ... take ... disciplinary action," 5 U.S.C. § 7106(a)(2)(A)—which, as we have said above, the law prohibits. Thus, if the disciplinary factors recited in the NTEU-Customs Service agreement were different from the factors permitted and required by federal personnel law, we would be confronted with the issue whether a provision not properly includable in a collective bargaining agreement must nonetheless be given effect unless challenged directly pursuant to the procedures set forth in the

ways or never bound by MSPB precedents," and found "no conflict between the arbitrator's opinion" and the relevant MSPB authority. *Id.* at 1565. It is not entirely clear whether even the dictum of the opinion means to assert that the arbitrator can ignore so fundamental an element of "MSPB precedent" as the "arbitrary or capricious" standard of review. *See id.* We recognize that the Court of Appeals for the Fed-

eral Circuit now has exclusive jurisdiction over adverse action appeals, *see* note 2, *supra.* Nonetheless, since its statement bearing upon this point is not entirely clear and is dictum in any event; since the prior decisions of this court are entirely clear; and since those prior decisions seem to us correct, we see no reason to depart from the law of this circuit.

Federal Service Labor-Management Relations title of the Civil Service Reform Act, 5 U.S.C. §§ 7116(a)(5), 7117(c) (1982). We find it unnecessary to reach that issue, however, since the present agreement can be interpreted in a fashion that renders it unquestionably lawful. Although it does not recite all the factors relevant under federal personnel law, those factors it does recite are consistent with them, and the remaining factors can reasonably be considered subsumed within the contract's residual phrase "any other factors or circumstances bearing upon the incidents or acts involved." Compare NTEU-Customs Collective Bargaining Agreement, Art. 30 §§ 1–3, reproduced in Initial Opinion and Award at 5–6, with Douglas v. Veterans Administration, supra, 5 MSPB at 329, 332. But although the language of the agreement may be given this breadth, there is nothing to indicate that the arbitrator interpreted it that way. To the extent the arbitrator considered himself, by reason of being bound to the specific factors enumerated in the agreement, unable to take account of all the factors permissible under federal personnel law, he would have been misinterpreting the agreement and thus misapplying the law.

IV

Since the arbitrator applied an erroneous standard of review, we must set aside his determination. OPM has urged us to resolve this matter finally here, on the ground that the agency could not, as a matter of law, be reversed in the circumstances of this case. We decline to do so, if only because the circumstances may not have been fully developed in the record if the parties (both of whom were applying the contractual test) believed that test to exclude any of the factors relevant under federal personnel law. We think it preferable to remand this proceeding to the arbitrator for reconsideration of the issue of level of discipline under the proper standard and taking into account all appropriate factors, with the ability to receive any further evidence that such reconsideration may render desirable.

The factors relevant under federal personnel law are set forth at some length in Douglas v. Veterans Administration, supra, 5 MSPB at 329–32. (We do not suggest that the arbitrator must explicitly allude to each of them.) The standard which must be met, in the application of those factors, has been variously described by the Board as whether the disciplinary action is "clearly excessive"; "arbitrary, capricious, or unreasonable"; "too harsh and unreasonable under the circumstances"; "unduly harsh, arbitrary, and unreasonable"; "an abuse of agency discretion, or ... [reflecting] an inherent disproportion between the offense and the personnel action, or disparity in treatment"; "unreasonable"; "clearly excessive in proportion to the sustained charges"; "violat[ive of] the principle of like penalties for like offenses, or ... otherwise unreasonable under all the relevant circumstances"; and "within tolerable limits of reasonableness." Id. at 326–29. The Board is under the impression that this standard differs from the "arbitrary or capricious" standard ordinarily applied by courts to review of administrative action, see 5 U.S.C. § 706(2)(A) (1982). Id. at 327–28. Though that is not entirely clear, see Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co., —— U.S. ——, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983) (under the arbitrary or capricious test courts determine if there has been "a clear error of judgment"), we need not resolve that detail here. Nor need we resolve the extent, if any, by which the standard diverges from the "just cause" standard normally applied by arbitrators in private-sector grievances. See McKelvey, Discipline and Discharge, in ARBITRATION IN PRACTICE 89–91 (A. Zack ed. 1984). An adequate description of the standard—perhaps as precise as the nature of the matter allows—is set forth in Douglas, supra, and that should suffice for the arbitrator's guidance. We do not suggest that the arbitrator must conduct an examination of the MSPB case law, in the manner of a common law judge, to assure himself that the outcome of his determination

is similar to the MSPB case closest on its facts. But it must be clear, at least, that he is making a conscientious application of the judicially approved MSPB standard. Only in this manner can there be assured that rough uniformity which is necessary in the review of federal agency disciplinary action.

We further note that if the arbitrator finds the agency action unsupportable on this basis, his subsequent task is not to select that discipline which in his independent view is appropriate, but merely to reduce the agency's to a level that is "within the parameters of reasonableness," *Douglas v. Veterans Administration, supra,* 5 MSPB at 333—that is, to reduce it only so much as is necessary to bring it to a level that can be sustained.

*Petition granted.*