**Raymond WILLIAMS, Plaintiff,**

v.

**Anthony M. FRANK, Postmaster General of the United States Postal Service, Defendant.**

**Civ. A. No. 88–0059–C.**

United States District Court,
D. Massachusetts.

Nov. 18, 1988.

William Lafferty, Boston, Mass., for plaintiff.

M. Ellen Carpenter, Asst. U.S. Atty., for defendant; Peter W. Gallaudet, Office of Field Legal Services, Windsor, Conn., of counsel.

## MEMORANDUM

CAFFREY, Senior District Judge.

The plaintiff, Raymond Williams, has filed suit in this Court appealing his removal from the Postal Service. In response to the plaintiff's motion for summary judgment, the defendant has filed cross motions for partial summary judgment and partial dismissal. The pertinent facts are as follows.

Mr. Williams received a career appointment with the Postal Service in April 1970. During his almost sixteen years with the Postal Service, Mr. Williams worked as a mail distributor, window clerk, and utility window clerk at the John F. Kennedy postal station in Boston. As a window clerk, Mr. Williams was responsible for selling stamps and money orders and, like all such clerks, was issued a "stamp credit" of $4,500 in a "stamp drawer" that he used when working the window.

On December 22, 1983, at the height of the pre-Christmas rush, Mr. Williams purchased a $250 money order from his own stamp credit. He allegedly left an envelope containing $250 cash and the money order receipt for another window clerk, Jim Cohen. Mr. Williams then entered his wife's name in the "purchaser" section of the money order, put his own name in the "payee" section, and cashed the order later that day at a different postal facility. The Postal Service processed this order and, in the usual course of business, the Money Order Division in St. Louis, Missouri, discovered in August 1984 that the money order had never been accounted for in the appropriate forms and that the receipt had never been received. Following an investigation, the Postal Service charged Mr. Williams with failure to account for the money order, failure to account for funds in the amount of $250 and the $1.55 money order fee, and failure to file a Daily Financial Report (Form 1412) for December 22, 1983.

When Mr. Williams learned of the charges against him, he explained that the $250 cash he had set aside for Mr. Cohen to pay for the money order must have gotten

lost in the pre-Christmas rush. He also explained that the money order was for his estranged wife to pay for child support and Christmas presents, and that he had simply reversed their names on the money order form by mistake. Mr. Williams authorized the Postal Service to deduct $50 from his pay checks until the money was repaid. In the fall of 1984, the Postal Service reviewed the charges against Mr. Williams, his explanation of the events of December 22, 1983, and his employment record, and removed him from the Service on November 30, 1984.

Mr. Williams then filed a grievance, pursuant to the American Postal Workers Union collective bargaining agreement, challenging his removal. An arbitration panel denied his claim on July 15, 1985. Subsequent appeals to the regional and national offices of the Merit Systems Protection Board ("MSPB" or "the Board") were denied. Mr. Williams, who is black, simultaneously filed a complaint with the Postal Service's Equal Employment Opportunity ("EEO") Office, charging that his removal constituted unlawful race discrimination under Title VII of the Civil Rights Act of 1964. The EEO found no evidence of race discrimination and dismissed Mr. Williams' complaint. Mr. Williams' appeal therefore comes to us in the form of a "mixed case complaint" under 29 C.F.R. § 1613.402, as it contains both an appeal of a MSPB final ruling and a charge of unlawful discrimination. *Id.* The Federal district courts, rather than the United States Court of Appeals for the Federal Circuit, have jurisdiction to hear such complaints. *Wiggins v. United States Postal Service,* 653 F.2d 219 (5th Cir.1981), cited with approval in *Chang v. Merit Systems Protection Board,* 677 F.2d 173, 174 (1st Cir.1982).

## STANDARD OF REVIEW

When considering cross motions for summary judgment, the court may fairly infer that no evidence other than the pleadings and supporting documents offered by the litigants need be considered in order to determine whether a genuine issue of material fact exists in the dispute. The court must consider each party's motion sepa-rately and decide whether that party is entitled to judgment as a matter of law under Rule 56 of the Federal Rules of Civil Procedure. *See* 28 Fed.Pro., L.Ed. § 62:586 (1984). Our task is a bit complicated in this case because the plaintiff and the defendant focus on two different stages in the proceedings below. The plaintiff argues that this Court should examine the legal sufficiency of the very first step in Mr. Williams' appeal process—the arbitrator's decision under the Union's collective bargaining agreement. The defendant argues that, as a matter of law, the Court cannot reach the arbitrator's decision and must instead focus on the MSPB's final ruling. Our review of the relevant statutes, regulations, and case law persuades us that the defendant's argument is correct. We note, however, that we would have reached the same decision had we adopted the position advocated by the plaintiff.

As a threshold matter, this Court has jurisdiction to review arbitration awards issued pursuant to collective bargaining agreements only under limited circumstances. In order to trigger review, the plaintiff must claim that his union breached its duty of fairly representing him at the arbitration hearing. *Abernathy v. United States Postal Service,* 740 F.2d 612, 616–17 (8th Cir.1984) (citing *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976)); *Bettencourt v. Boston Edison Co.,* 560 F.2d 1045, 1048–49 (1st Cir.1977); *DeLorto v. United Parcel Service, Inc.,* 401 F.Supp. 408, 409–10 (D.Mass.1975). We have carefully reviewed the plaintiff's pleadings and find no such claim asserted therein. Instead, the plaintiff seeks review of the arbitrator's decision based on *Douglas v. Veterans Administration,* 5 MSPB 313, 5 M.S.P.R. 280 (1981). Because *Douglas* forms the analytical foundation of the plaintiff's appeal, and because this is a matter of first impression in this circuit, we believe it may be helpful to this and future litigants to pause briefly to discuss where *Douglas* fits in the puzzle of judicial review of administrative agency decisions.

In *Douglas*, the Merit Systems Protection Board took up the question of whether their statutory authority under 5 U.S.C. § 1205(a)(1), enacted as part of the Civil Service Reform Act of 1978, "includes authority to modify or reduce a penalty imposed on an employee by an agency's adverse action, and if so, by what standards that authority should be exercised." 5 M.S.P.R. at 284. In its thorough review of the case law and relevant statutes and regulations, the MSPB clarified that it "is designed to function as an independent administrative establishment within the executive branch, not as part of the Judicial Branch." *Id.* at 287. As such, case law concerning the limited judicial review permitted agency decisions does not apply to the MSPB. Instead, "[w]e hold that the Board's authority under 5 U.S.C. § 1205(a)(1) to 'take final action' on matters within its jurisdiction includes authority to modify or reduce agency-imposed penalties." *Id.* at 296.

After reviewing the basis for its authority, the MSPB in *Douglas* addressed the scope of review it may apply to agency decisions. Again, the Board rejected the limited review permitted the federal courts and explained that "[o]ur role in this area, as in others, is principally to assure that managerial discretion has been legitimately invoked and properly exercised." *Id.* at 301. *Douglas* established the following minimum standards:

> the Board *must*, in addition to determining that procedural requirements have been observed, review the agency's penalty selection to be satisfied (1) that on the charges sustained by the Board the agency's penalty is within the range allowed by law, regulation, and any applicable table of penalties, and (2) that the penalty 'was based on a consideration of the relevant factors and [that] ... there has [not] been a clear error of judgment.'

*Id.* (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 417, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971)) (emphasis added). In contrast to this mandatory language ("the Board *must*"), the twelve factors set out for consideration when reviewing a penalty—the so-called "*Douglas* factors"—clearly are precatory.[1] The Board stated that "[i]n considering whether the agency's judgment was reasonably exercised, it must be borne in mind that the relevant factors *are not to be evaluated mechanistically by any preordained formula.*" *Id.* 5 M.S.P.R. at 306 (emphasis added). Instead, *Douglas* established that the guiding principle for MSPB review of agency decisions is "practical realism, eschewing insistence upon rigid formalism so long as the substance of equity in relation to genuinely similar cases is preserved." *Id.* 5 M.S.P.R. at 306–07.

---

1. The *Douglas* factors, "[w]ithout purporting to be exhaustive," include the following:

   (1) The nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated;

   (2) the employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position;

   (3) the employee's past disciplinary record;

   (4) the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability;

   (5) the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties;

   (6) consistency of the penalty with those imposed upon other employees for the same or similar offenses;

   (7) consistency of the penalty with any applicable agency table of penalties;

   (8) the notoriety of the offense or its impact upon the reputation of the agency;

   (9) the clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question;

   (10) potential for the employee's rehabilitation;

   (11) mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter; and

   (12) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.

   *Douglas*, 5 M.S.P.R. at 303–04.

■ We have taken this detour through *Douglas* in order to clarify both what the case is and what it is not. *Douglas* is the authoritative word on what the MSPB is empowered to do when reviewing agency decisions, particularly decisions concerning the penalties imposed on employees. The *"Douglas* factors" are twelve suggestions of matters for the Board to consider when reviewing agency penalties. *Douglas* is not, however, a jurisdiction-conferring decision that permits the federal courts to disturb arbitration awards authorized by collective bargaining agreements, and it does not establish a twelve-point checklist that must be considered every time the MSPB reviews an agency-imposed penalty.[2] Because *Douglas* is neither of these things, this Court cannot, on the basis of *Douglas* alone, review the arbitrator's decision upholding Mr. Williams' removal from the Postal Service. As we mentioned above, we may review arbitration awards under collective bargaining agreements only when the plaintiff has claimed unfair or inadequate representation by the union at the arbitration hearing. Mr. Williams has made no such claim.

■ This Court does have jurisdiction, however, to review the MSPB's final ruling in Mr. Williams' case. That jurisdiction is granted by statute, and the *Douglas* decision does come into play at this point. This Court may set aside any MSPB action, findings, or conclusions we find to be

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) obtained without procedures required by law, rule, or regulation having been followed; or

(3) unsupported by substantial evidence

5 U.S.C. § 7703(c). Determining whether an MSPB ruling violates section 7703(c) requires a careful review of the record. As the United States Court of Appeals for the Federal Circuit has explained, "the agency action still is sustained unless found to be arbitrary, capricious, an abuse of discretion, contrary to law, or unsupported by substantial evidence ... Whether the guidelines established in *Douglas* were followed is but one factor to be noticed in our review." *Nagel v. Department of Health and Human Services,* 707 F.2d 1384, 1387 (Fed.Cir.1983).

■ The plaintiff correctly argues that the MSPB did not specifically mention the *Douglas* decision in its review of his removal from the Postal Service. We have noted above, however (see footnote 1, *supra* ), that the law does not require that the MSPB expressly mention *Douglas,* nor ritualistically recite each of its twelve factors, in every review of an agency-imposed penalty. Only those factors relevant to the individual case need be reviewed. *See supra* footnote 2.

■ In our careful examination of the administrative record, we note that the MSPB Boston Regional Office considered the following relevant factors:

(1) the nature and seriousness of the offense (the MSPB considered this an intentional rather than inadvertant act);

(2) the consistency of the penalty with those imposed upon other employees for the same or similar offenses (the MSPB considered the penalty imposed on a white employee whose stamp credit was $700 short);

(3) the employee's past work record;

(4) the employee's job level and type of employment (including his fiduciary role

---

2. The post-*Douglas* decisions of the Courts of Appeals apparently are in unanimous agreement on this latter point. *See, e.g., Parker v. United States Postal Service,* 819 F.2d 1113 (Fed. Cir.1987) ("the factors discussed in *Douglas* [are] not exhaustive of all factors which might be considered in a particular case and, by the same token, not all of the twelve factors would be pertinent in every case"); *Quinton v. Department of Transportation,* 808 F.2d 826 (Fed.Cir. 1986) ("the MSPB's decision also contains an adequate analysis of the pertinent factors re-

ferred to in *Douglas* ...."); *Kumferman v. Department of the Navy,* 785 F.2d 286 (Fed.Cir. 1986) ("It is not reversible error if the Board fails to expressly discuss all of the *Douglas* factors."); *Devine v. Pastore,* 732 F.2d 213 (D.C. Cir.1984) ("We do not suggest that the arbitrator must explicitly allude to each [factor]."); *Nagel v. Department of Health and Human Services,* 707 F.2d 1384 (Fed.Cir.1983) ("We hold that no reversible error was committed by the board in this case when it discussed only those factors listed in the *Douglas* case it deemed relevant.").

and his contact with the public at the stamp window);

(5) the employee's past disciplinary record (which included two prior five-day suspensions and two letters of warning); and

(6) the clarity with which the employee was on notice of any rules that were violated in committing the offense (Mr. Williams had purchased postal money orders before this incident and therefore knew the proper procedures).

Thus, although neither the MSPB Boston Regional Office nor the national office specifically mentioned *Douglas* or neatly enumerated the factors they considered when reviewing the Postal Service's penalty of removing Mr. Williams, the listing above demonstrates that the Board did consider those factors it deemed relevant to Mr. Williams' case, including Mr. Williams' race discrimination claims. We find nothing in the record that suggests a violation of section 7703(c), the statutory standard for judicial review of MSPB actions. At each step, the plaintiff received the procedural protections required by law and received a thorough hearing on the merits of his claim. We find no arbitrary or capricious actions and no decisions unsupported by substantial evidence.[3]

### CONCLUSION

Our review of the record reveals no genuine issues of material fact in dispute between the parties. Guided by the principle of deference to administrative agency actions, we have reviewed the final rulings of the MSPB in Mr. Williams' case and find no violations of 5 U.S.C. § 7703(c). Because the plaintiff has failed to allege that his union representation was inadequate, we cannot disturb the arbitrator's decision upholding Mr. Williams' removal from the Postal Service. And because the plaintiff has failed to establish that he is entitled to judgment as a matter of law, the defendants' motions for partial dismissal of the plaintiff's claim concerning the arbitration award and partial summary judgment of the plaintiff's claim concerning the MSPB rulings should be allowed.

### ORDER

In accordance with memorandum filed this date, it is ORDERED:

1. Plaintiff's motion for summary judgment is denied.

2. Defendant's motion for partial dismissal is allowed.

3. Defendant's motion for partial summary judgment is allowed.

**3.** The plaintiff has brought to our attention the recent decision in *Ciulla v. United States Postal Service,* 37 M.S.P.R. 627 (1988). This case is yet another reminder that the MSPB must take seriously its review of agency-imposed penalties, but we find it distinguishable on the facts from the case at bar. In *Ciulla,* the "agency deciding official" was not familiar with *Douglas* and stated that "he viewed all offenses relating to theft of mail alike, regardless of whether the employee involved was a supervisor or a subordinate; whether the theft was from mail such as first class or special delivery as opposed to mail that was undeliverable; and regardless of the amount of the theft." 37 M.S.P.R. at 629–30. We find no similar problematic attitude in the administrative record currently before us; indeed, the MSPB Boston Regional Office was careful to compare Mr. Williams' use of the money order with other types of stamp drawer shortages.