Terrie G. REID, et al., Petitioners,

v.

**DEPARTMENT OF COMMERCE, Respondent.**

Appeal Nos. 85–2011/2281.

United States Court of Appeals, Federal Circuit.

May 30, 1986.

Phillip R. Kete, Washington, D.C., for petitioners.

Sandra P. Spooner, of Dept. of Justice, Wash., D.C., for respondent. With her on brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Robert A. Reutershan, Asst. Director and David B. Stinson. Of counsel were Jon Pearson, Thomas C. Conley and Carol Anning, of the Office of Gen. Counsel, Dept. of Commerce, Wash., D.C.

Before SMITH, NIES, and ARCHER,* Circuit Judges.

## ORDER

ARCHER, Circuit Judge.

The American Federation of Government Employees, Local 2782 (AFGE Local 2782 or Union), has moved to enter this case as petitioner. The motion is denied.

### Background

The named petitioners herein were involved in an agency-wide reduction-in-force (RIF) conducted by the Census Bureau of the Department of Commerce. They signed authorization cards designating AFGE Local 2782 as their representative before the Merit Systems Protection Board (MSPB or Board) and were so represented by the Union's designee in those proceedings. 5 U.S.C. § 7701(a)(2). The decisions of the MSPB being adverse, an attorney retained by AFGE Local 2782 represented petitioners in prior appeals to this court.[1] See, e.g., Crispin v. Department of Commerce, 732 F.2d 919 (Fed.Cir.1984); Austin v. Department of Commerce, 738 F.2d 453 (Fed.Cir.1984) (unpublished opinion); Nightengale v. Department of Commerce, 738 F.2d 453 (Fed.Cir.1984) (unpublished opinion). We remanded the cases to the MSPB for full hearings to determine whether the agency had properly established the various competitive levels for the employees' positions as used in the RIF. On remand, the MSPB again rendered decisions adverse to petitioners.

Thereafter, an attorney retained by AFGE Local 2782 filed a consolidated appeal in this court purporting to represent the named petitioners. During oral argument, the court questioned whether appeal had been authorized by the petitioners. Counsel admitted he had had no communication with any of them, but instead was employed by the Union to represent them. Counsel was directed to advise the court whether each petitioner had been contacted by the Union regarding the adverse decision of his or her case by the MSPB and had authorized an appeal. The response makes clear that the "named petitioners did not, in fact, direct the filing of these petitions after receipt of the MSPB decisions being challenged...." Counsel for petitioners noted, however, that Union representatives believe the individual petitioners, when they signed the MSPB representation forms, understood and desired that the Union would provide representation for any necessary judicial appeals. AFGE Local 2782 has now moved to enter this case as petitioner in an attempt to cure the absence of specific appeal authorization by the individual petitioners, other than Terrie G. Reid,[2] and we must determine if it has standing to do so.

## OPINION

■ A. Whether the Union has standing to be a petitioner in this case requires inquiry into both the constitutional limitations on federal court jurisdiction and prudential limitations on its exercise. Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975). The rules of standing are threshold determinants of the propriety of judicial intervention and it is the responsibility of the Union in this case to demonstrate that it is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers. Id. at 517, 95 S.Ct. at 2214–15. For this purpose, we will accept the facts set forth in the Union's motion as true.

Article III of the Constitution restricts the exercise of federal judicial power to actual "cases" and "controversies." Allen v. Wright, 468 U.S. 737, 104 S.Ct. 3315,

---

* Following the retirement of Circuit Judge Kashiwa on January 7, 1986, Circuit Judge Archer was designated to the panel for this case.

1. For convenience and to distinguish from petitions for review to the MSPB, we refer to the review in an appellate court as an appeal.

2. Terrie G. Reid has confirmed her authorization of the appeal and by separate order the other petitioners are being allowed time to take similar action.

3324, 82 L.Ed.2d 556 (1984); *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 151, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). This restriction imposes the requirement on the person seeking judicial relief to allege a "distinct and palpable injury to himself." *Warth*, 422 U.S. at 501, 95 S.Ct. at 2206. He must also show that "the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision.'" *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976); *see also Allen*, 104 S.Ct. at 3325.

The standing doctrine also embraces several judicially self-imposed limits on the exercise of federal jurisdiction. These prudential restrictions include a general prohibition precluding a litigant from raising another person's legal rights, a rule barring adjudication of generalized grievances more appropriately addressed in the representative branch, and a requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked. *Allen*, 104 S.Ct. at 3324–25.

B. With respect to the Article III injury requirement, the Supreme Court has recognized that an association may have standing to assert the claims of its members, even where the association itself has not suffered injury from the challenged action.[3] *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 342, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977) (associational standing). The association may be the appropriate representative of its members, entitled to invoke the jurisdiction of a federal court, when:

> (i) its members would otherwise have standing to sue in their own right;

> (ii) the interests it seeks to protect are germane to the organization's purpose; and

> (iii) neither the claims asserted nor the relief requested requires the partic-

ipation of the individual members in the lawsuit.

*Id.* at 343, 97 S.Ct. at 2441.

There can be little doubt the Union satisfies the first two of the *Hunt* requirements. The Union argues that it also satisfies the third requirement in this case because "(c)ourt of appeals review of administrative decesions [sic] is a perfect example of a case where individual participation is not necessary." In its view, the record already exists and there is no opportunity for the development of facts personal to each affected employee.

The third *Hunt* factor cannot be glossed over so lightly. In *Warth*, the Court said that in all cases in which it had recognized association standing, based on injury to the members, the type of relief sought was a "declaration, injunction or some other form of prospective relief...." 422 U.S. at 515, 95 S.Ct. at 2213. The association there sought relief in damages for alleged injuries to its members and the damage claims were not common to the entire membership or shared by all in equal degree. In rejecting the association's standing to pursue this type of relief, the Court stated:

> whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof. Thus, to obtain relief in damages, each member of Home Builders who claims injury as a result of respondents' practices must be a party to the suit, and Home Builders has no standing to claim damages on his behalf.

*Id.* at 515–16, 95 S.Ct. at 2214.

The Union here, if permitted to enter as petitioner, would similarly be seeking particularized relief dependent on the individual circumstances of each employee. While damages are not sought, reinstatement relief (and concomitant back pay) similarly

---

**3.** Here the Union has not asserted any direct injury, but seeks only to enter this appeal in a representative capacity for its members who have sustained injury. For this purpose, we assume that the individual petitioners continue to be Union members or that their former relationship as members would warrant the Union continuing to act in such a representative capacity.

requires that the injured union members be parties to the action.

Furthermore, we are not convinced that the third *Hunt* requirement can be avoided solely because an appellate court does not engage in fact finding. Indeed, the Union has cited no authority for its broad contention and we find none. The decision herein, even though the cases are consolidated for appeal and argument, must separately address the facts and legal conclusions of the Board with respect to each named petitioner.

█ C. Turning to the prudential considerations, they also lead to the conclusion that the Union lacks association standing in this case. In this inquiry, the focus is whether the Union is within the intendment of the jurisdictional statute in seeking to assert the legal rights or interests of third persons.[4]

Congress, through the exercise of its legislative power, can resolve the question of prudential limitations on standing one way or the other. *Data Processing Service,* 397 U.S. at 154, 90 S.Ct. at 830. It may, by statute, grant a right of action, either expressly or by clear implication, to persons seeking relief on the basis of the legal rights or interests of third persons. *Warth,* 422 U.S. at 501, 95 S.Ct. at 2206. Logically, Congress can also deny such a right of action. *See Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979); *Stark v. Wick-*

ard, 321 U.S. 288, 312, 64 S.Ct. 559, 572, 88 L.Ed. 733 (1944) (Frankfurter, J., dissenting) ("whether judicial review is available at all, and if so, who may invoke it, . . . are questions that depend for their answer upon the particular enactment under which judicial review is claimed").

Under 28 U.S.C. § 1295(a)(9) (1982),[5] this court has exclusive subject matter jurisdiction over final orders and decisions of the MSPB pursuant to, *inter alia,* 5 U.S.C. § 7703(b)(1).[6] *Lindahl v. Office of Personnel Management,* 470 U.S. 768, 105 S.Ct. 1620, 1634, 84 L.Ed.2d 674 (1985); *Yarbrough v. Office of Personnel Management,* 770 F.2d 1056, 1059 (Fed.Cir.1985); *Bronger v. Office of Personnel Management,* 769 F.2d 756, 757 (Fed.Cir.1985) (en banc), *cert. denied,* —— U.S. ——, 106 S.Ct. 882, 88 L.Ed.2d 918 (1986). These provisions do not provide guidance as to who is the proper litigant to invoke this jurisdiction for they do not create the litigant's legal right to appeal.[7] Thus, when a litigant attempts to invoke this court's subject matter jurisdiction under § 7703(b)(1), the statutory provision or regulation on which the claim is based must be examined to determine whether the litigant possesses standing.

█ In this case, § 7703(a)(1) of Title 5 creates an express right of appeal to this court for "employees" adversely affected or aggrieved by a final decision of the

---

4. Because the Union has not asserted direct injury, *see supra* note 3, the prudential limitation of being within the zone of interest is inapplicable; neither is the generalized grievance limitation implicated.

5. Section 1295 provides in pertinent part that:
(a) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—
\* \* \* \* \* \*
(9) of an appeal from a final order or final decision of the Merit Systems Protection Board, pursuant to sections 7703(b)(1) and 7703(d) of title 5. . . .

6. Section 7703(b)(1) provides in pertinent part that:
Except as provided in paragraph (2) of this subsection, a petition to review a final order

or a final decision of the Board shall be filed in the United States Court of Appeals for the Federal Circuit. . . .

7. The doctrine of standing focuses on the litigant seeking to invoke the jurisdiction of a federal court, and not on the issues to be resolved. *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). Where the actual or threatened injury required by Article III exists solely by virtue of statutes creating legal rights which have been invaded, the standing question depends on whether the statutory provision on which the claim rests properly can be understood as granting persons in the litigant's position a right to judicial relief. *Warth,* 422 U.S. at 500, 95 S.Ct. at 2206.

MSPB as an adjunct to the jurisdictional provision of § 7703(b)(1). *Lindahl,* 105 S.Ct. at 1634. This section provides standing for *judicial* appeal of final orders and decisions of the MSPB under § 7701. The Supreme Court's holding in *Lindahl* also implies that standing before the Board may, in limited circumstances (e.g., a MSPB decision under § 8347(d)(1) instead of § 7701), be the predicate for standing to appeal to this court.[8] Section 7701(a) permits an employee to seek Board review of "any action which is appealable to the Board under any law, rule or regulation." To provide for review by the MSPB of employee rights under 5 U.S.C. § 3502 in a reduction in force, the Office of Personnel Management has promulgated 5 C.F.R. § 351.901 (1986).[9] Accordingly, we examine these statutory and regulatory provisions, as well as § 7703(a)(1), to determine whether the Union is, within the intendment of Congress, a proper party to assert the substantive rights of its individual members or sue on their injury. *Data Processing Service,* 397 U.S. at 154, 90 S.Ct. at 830.

Statutory analysis requires first that we look to the express language of the statute to determine its meaning. *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). If it is plain and unequivocal on its face, there is usually no need to resort to the legislative history underlying the statute. *United States v. Oregon,* 366 U.S. 643, 648, 81 S.Ct. 1278, 1281, 6 L.Ed.2d 575 (1961). The function of the court is then limited to enforcing the statute according to its terms, *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917); 2A C.D. Sands, SUTHERLAND STATUTORY CONSTRUCTION, § 46.01 (4th ed.1973) [hereinafter 2A Sands], unless a literal interpretation would lead to an incongruous result. For example, if a liter-

---

8. *See Cheeseman v. Office of Personnel Management,* 791 F.2d 138, 139–40 & n. 1 (Fed.Cir. 1986), noting that *Gilman v. Office of Personnel Management,* 743 F.2d 881 (Fed.Cir.1984), had been effectively overruled by *Lindahl v. Office of Personnel Management,* 470 U.S. 768, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985), and *Bronger v. Office of Personnel Management,* 769 F.2d 756 (Fed.Cir.1985) (en banc), *cert. denied,* —— U.S. ——, 106 S.Ct. 882, 88 L.Ed.2d 918 (1986). *Gilman* held that petitioner, a civil servant's widow appealing from an adverse MSPB decision on her annuity claim, was not authorized by § 7703(a) to appeal to this court because she was not an employee. 743 F.2d at 883.

The Supreme Court in *Lindahl* stated that the "fact that § 7703(a)(1) provides one action for review ... does not preclude the possibility of other actions for review...." 105 S.Ct. at 1634. Subsequent to *Lindahl* this court has exercised jurisdiction over retirement annuity claims brought by former employees, *Bronger,* 769 F.2d at 757, a retirement annuity claim brought by the executor of the estate of a former employee, *Yarbrough v. Office of Personnel Management,* 770 F.2d 1056 (Fed.Cir.1985), and a survivor annuity claim brought by the widow of a former employee, *Cheeseman,* 791 F.2d at 139. In each of these cases the non-employee party seeking judicial review of an adverse MSPB decision had standing before the MSPB.

9. Section 3502 provides in pertinent part that:
(c) An employee who is entitled to retention preference and whose performance has not been rated unacceptable under a performance appraisal system implemented under chapter 43 of this title is entitled to be retained in preference to other competing employees.

Section 3502 was enacted prior to the Civil Service Reform Act (CSRA) of 1978, Pub.L. No. 95–454, 92 Stat. 1111. *See infra* note 10. Section 202 of the CSRA established the MSPB, and various other sections of the Act provided a statutory right of review from adverse agency action. *See, e.g.,* 5 U.S.C. § 4303(e); 5 U.S.C. § 7513(d). The CSRA, however, did not provide a direct statutory right of appeal to the MSPB for employee rights adversely affected by agency action under § 3502. OPM, under the authority of § 201 of the CSRA, promulgated 5 C.F.R. § 351.901 to provide employees aggrieved by a RIF action a right of "appeal" to the MSPB. *See also infra* notes 12, 14.

5 C.F.R. § 351.901 provides:
An employee who has been furloughed for more than 30 days, separated, or demoted by a reduction-in-force action may appeal to the Merit Systems Protection Board. Unless the presiding official determines that there are material issues of fact in dispute that would require a hearing for resolution, the review of an agency action shall be confined to the written record.

In the instant case the employees have alleged that the agency violated their right to be retained during the RIF by improperly establishing their competitive levels. 5 C.F.R. § 351.403 (1986).

al reading of the statute would impute to Congress an irrational purpose, *United States v. Bryan*, 339 U.S. 323, 338, 70 S.Ct. 724, 734, 94 L.Ed. 884 (1950), or would thwart the obvious purposes of the statute, *Trans Alaska Pipeline Rate Cases*, 436 U.S. 631, 643, 98 S.Ct. 2053, 2061, 56 L.Ed.2d 591 (1978), or would lead to a result at variance with the policy of the legislation as a whole, *Trustee of Indiana University v. United States*, 618 F.2d 736, 739, 233 Ct.Cl. 88, 94 (1980), then literal interpretation will be eschewed in favor of resort to the legislative history to ascertain the intent of Congress. *United States v. Oregon*, 366 U.S. at 648, 81 S.Ct. at 1281; 2A Sands § 46.07.

The meaning of the term "employee" as used in §§ 3502, 7701(a) and 7703(a)(1), enacted as part of the Civil Service Reform Act (CSRA) of 1978, Pub.L. No. 95–454, § 205, 92 Stat. 1111, 1138, 1143–44, is not ambiguous.[10] Congress, in Pub.L. No. 89–554, § 2105, 80 Stat. 409 (1966), promulgated 5 U.S.C. § 2105(a) which defines an employee, *for the purposes of Title 5*, as an individual. Other sections of the CSRA, in which the term "employee" is used and defined for specific purposes, continue the basic definition of an employee as an individual. *See, e.g.*, 5 U.S.C. §§ 4301(2), 7501(1), and 7511(a)(1) (1982).

In addition, Chapter 71—Labor-Management Relations—of Title 5, distinguishes specifically between Congress' use of the word "employee" and its use of the term "person." In § 7103(a)(1), Congress defined "person" to mean individual, labor organization, or agency, but in § 7103(a)(2) limited the term "employee" to mean an individual.

In view of the repeated use of employee to mean an individual, it would be contrary to the plain and unequivocal language of the statute to say that the term "employee" as used in §§ 3502, 7701(a) and 7703(a)(1) encompasses a labor organization, such as AFGE Local 2782. It would

also strain the ordinary meaning of the term "employee." 2A Sands, § 46.01. Moreover, a literal reading of the statute to require appeal by the individual employee does not produce an incongruous result, or frustrate the obvious purpose or the policy of the CSRA as a whole.

In *American Federation of Government Employees, Council of Prison Locals, Local 1286 v. United States Department of Justice*, 738 F.2d 742 (6th Cir. 1984), the court dismissed, for lack of jurisdiction, a petition for review brought by, and in the name of, the aggrieved employee's union. There an employee's removal was challenged under the negotiated grievance procedure provided by 5 U.S.C. § 7121 (1982). Section 7121(b)(3)(A) provides that the union, in its own behalf or on behalf of any employee, may present and prosecute grievances, and § 7121(b)(3)(C) provides that only the union may invoke binding arbitration to resolve grievances not satisfactorily settled. Even with this authorized union involvement under a negotiated procedure, the court concluded, based upon the statutory language and legislative history, that Congress intended to limit appellate jurisdiction under § 7703 to appeals initiated by the aggrieved employee personally. *Id.* at 747.

Assuming *arguendo* that the legislative history of the CSRA should be examined, the only expression of congressional intent regarding § 7703(a)(1) is found at S.Rep. No. 969, 95th Cong., 2d Sess. 62, *reprinted in* 1978 U.S. CODE CONG. & AD. NEWS 2723, 2784, wherein it is stated that "[t]he wording [of § 7703(a)] is similar to the general provisions governing the right of review from agency actions found in Section 702 of the Administration [*sic*] Procedure Act." AFGE Local 2781 argues that this legislative history supports its position that it has standing under § 7703(a)(1) since, if organizations can litigate under § 702 if their members have standing, *Save Our Wetlands, Inc. v. Sands*, 711 F.2d 634, 639 (5th Cir.1983), it is likely that Congress

10. Subsection (c) of section 3502 was promulgated under Pub.L. No. 89–554, § 3502(b), 80 Stat. 428, 428–29 (1966), and was subsequently amended to its present form by Pub.L. No. 95–454, § 307(e), 92 Stat. 1111, 1149 (1978).

intended the same rule to govern under § 7703(a)(1).

We do not find this snippet of legislative history persuasive. Congress must be presumed to have been aware of the broad scope of standing afforded by the term "person" as used in § 702 of the APA when it drafted the provisions of the CSRA, yet the CSRA, as enacted by Congress, used a more restrictive term. Since the right of appellate review under § 7703(a)(1) is phrased in terms of "any employee or applicant for employment," the logical conclusion is that Congress intended to narrowly circumscribe the party who may initiate appellate review under this provision of the CSRA.

An instructive statement on this question is found in S.Rep. No. 969, 95th Cong., 2d Sess. 102–03, *reprinted in* 1978 U.S. CODE CONG. & AD. NEWS at 2824–25, in the legislative history of Chapter 72 of Title 5, Federal Service Labor-Management Relations, which states that:

> Where the negotiated procedure covers adverse action and discrimination complaints, the employee has an option to use the negotiated procedure of [*sic-see* 5 U.S.C. § 7121(e)(1) (1982)] the statutory appeal procedure [§ 7701], but not both. If the employee chooses the negotiated procedure, only the exclusive representative of the unit *may act* as the employee's representative. However, if the employee chooses the statutory appeal procedure, the employee may also choose his/her own representative and the union (as the exclusive representative of the unit) would have neither *a right* nor an obligation to represent the employee. (Emphasis added).[11]

If a union has no independent right to represent an employee before the MSPB (under the above-referenced statutory ap-peal procedure of § 7701), then *a priori* it has no independent right to initiate MSPB proceedings on behalf of an employee under § 7701, i.e., it has no standing under § 7701. It would be anomalous to conclude that a union nevertheless has standing to appeal from the MSPB to this court under § 7703(a)(1).

D. AFGE Local 2782, in support of its position that a union has standing under § 7703(a)(1), cites two decisions of the Court of Appeals for the District of Columbia Circuit—*Local 2578, American Federation of Government Employees v. General Services Administration,* 711 F.2d 261 (D.C.Cir.1983), and *National Treasury Employees Union v. Merit Systems Protection Board,* 743 F.2d 895 (D.C.Cir.1984).[12] In *Local 2578, AFGE,* the court considered the sufficiency of an arbitrator's decision in an appeal under § 7703[13] which was initiated by the union on behalf of the aggrieved employee. The court, however, did not address the question of whether the union, as the named petitioner, had standing to bring the appeal nor was there any indication that this issue was raised. *Local 2578, AFGE* is, therefore, not persuasive in connection with the union's contention in this case that it would have standing to exercise the rights of the petitioners herein.

In *NTEU* a petition was filed with the MSPB by the union for review of an Office of Personnel Management (OPM) regulation pursuant to 5 U.S.C. § 1205(e)(1)(B). That section provides for MSPB review of OPM rules or regulations upon petition by "any interested person." The union thereafter appealed the MSPB order upholding the validity of the challenged regulation. The D.C. Circuit determined that under the circumstances of that case the union had standing to seek judicial review of a

---

**11.** *See AFGE, Local 1286,* 738 F.2d at 745, wherein the court stated that it is the *employee* who from the inception of the proceedings determines the procedural avenue to travel, and the union is without recourse from his decision.

**12.** Prior to the effective date of the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25 (approved April 2, 1982, effective October 1, 1982), appeals from the MSPB could be taken in any circuit. *See infra* note 14; *NTEU,* 743 F.2d at 901.

**13.** Section 7121(f) of Title 5 provides that § 4302 and § 7512 matters submitted under a negotiated grievance procedure are subject to appeal under § 7703 in the same manner as if the decision had been made by the Board.

§ 1205(e) order as an "aggrieved party" within the meaning of 28 U.S.C. § 2344.[14] That standard is inapplicable here.

We conclude that Congress, in using the term "employee" in § 7703(a)(1)[15] and in defining that term to mean an individual, has exercised its legislative prerogative to impose a prudential limitation on the exercise of this court's jurisdiction over adverse decisions of the MSPB. The unequivocal language of the statute supports this position, and the position is not demonstrably contrary to the legislative history or the policy of the CSRA. "The remedy for any dissatisfaction with the results in particular cases lies with Congress" and not this court. "Congress may amend the statute, we may not." *Griffith v. Oceanic Contractors, Inc.*, 458 U.S. 564, 576, 102 S.Ct. 3245, 3253, 73 L.Ed.2d 973 (1982).

The motion of AFGE Local 2782 to enter this case as petitioner is denied.

**14.** Section 206 of the CSRA added subparagraph (6) to § 2342 of the Administrative Orders Review Act (Hobbs Act), 28 U.S.C. §§ 2341 *et seq.* It provided exclusive jurisdiction (jurisdiction being invoked by filing a petition as provided in 28 U.S.C. § 2344) in the appellate courts to determine the validity of "all final orders of the Merit Systems Protection Board except as provided for in section 7703(b) of Title 5." Section 137 of the Federal Courts Improvement Act, Pub.L. No. 97–164, 96 Stat. 26, 42, in transferring this jurisdiction to the United States Court of Appeals for the Federal Circuit, struck subparagraph (6) of § 2342.

**15.** And in §§ 7701(a) and 3502.