**Thomas D. CLARK, Michael Heneck, Roger S. Murphy and Ronald S. Steele, Petitioners,**

v.

**OFFICE OF PERSONNEL MANAGEMENT, Respondent.**

**No. 95–3768.**

United States Court of Appeals, Federal Circuit.

Sept. 12, 1996.

Lori A. Gaglione, Kattman & Eshelman, P.A., Jacksonville, FL, argued, for petitioners. With her on the brief, was John F. Kattman.

Armando O. Bonilla, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, argued, for respondent. With him on the brief, were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Joseph A. Kijewski, Assistant Director.

Before MICHEL, Circuit Judge, and FRIEDMAN, Senior Circuit Judge, and LOURIE, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

Under the Dual Compensation Act, Pub.L. No. 88–448, §§ 202–203, 78 Stat. 484, 486–87 (1964) (codified as amended at 5 U.S.C. §§ 3502(a) & 6303(a) (1994)) federal civilian employees retired from the military are entitled to credit, for specified civil service purposes, for active military service "during a war, or in a campaign or expedition for which a campaign badge has been authorized." 5 U.S.C. §§ 3502(a) & 6303(a). The Act does not define the term "war." The question is the validity of the Office of Personnel Management (OPM)'s interpretation of this provision that "war" means a Congressionally-declared war and that, if the employee's military service was not in such a "war," the employee is entitled to credit only for military service performed in a campaign or expedition for which a campaign badge was authorized. The Merit Systems Protection Board (Board) upheld OPM's interpretation, and we affirm.

## I.

The four petitioners are federal civilian employees. Prior to their civilian service, they served in the military during the Vietnam conflict, but did not participate in a campaign or expedition in that country.

The OPM Guide to Processing Personnel Actions, which instructs personnel employees how to calculate employees' length of service pursuant to all of the federal personnel statutes, states:

> In the absence of statutory definitions for "war" and "campaign or expedition," OPM considers to be "wars" only those armed conflicts for which a declaration of war was issued by Congress. The title 38, U.S.C., definition of "war," which is used in determining benefits administered by the Department of Veterans Affairs, includes the Vietnam Era and other armed conflicts. That title 38 definition is NOT applicable for civil service purposes.

OPM, Guide to Processing Personnel Actions 7–31 n. 1 (1994).

The Guide explains:

For example, if retiree was on active duty for the entire period of the Vietnam campaign (07–01–58 through 03–28–73) but served in that campaign (i.e., in Vietnam or southeast Asia) for only 14 months, the retiree is entitled to campaign service credit for only that 14 months. He or she is *not* entitled to credit for time on active duty outside the campaign area.

OPM, Guide to Processing Personnel Actions 6–14 (1995).

Because none of the petitioners' military service during the Vietnam conflict was performed in southeast Asia, OPM refused to credit that service in calculating their length of service in determining their rights in a reduction in force and their annual leave entitlement.

The petitioners then filed with the Board a request for review of OPM's interpretation of the foregoing provision of the Dual Compensation Act. They contended that their service during the Vietnam conflict was service during a "war" under the Act.

The Board denied the request for review, because previously it had "considered and rejected the arguments raised by the petitioners" in *Brooks v. Office of Personnel Management*, 59 M.S.P.R. 207 (1993), and the "petitioners have presented no persuasive argument that the Board's decision in *Brooks* was incorrect." *Clark v. Office of Personnel Management*, 68 M.S.P.R. 395, 397–98 (1995).

## II.

At oral argument the court raised the question whether, in view of the statutory provision that, "in its sole discretion" the Board may grant review of any OPM rule or regulation, we have jurisdiction to review the Board's denial of review in this case. In supplemental briefs, the government contends that we have jurisdiction but that the Board's decision is unreviewable, and the petitioners contend that we have jurisdiction and may review the Board's decision under the traditional standards governing such review.

We conclude that we have jurisdiction to review the Board's decision because the Board decided the merits, i.e., it rejected the petitioners' challenge to OPM's interpretation of the Dual Compensation Act.

Insofar as here pertinent, the Civil Service Reform Act of 1978 provides:

At any time after the effective date of any rule or regulation issued by the Director of the Office of Personnel Management in carrying out functions under section 1103, the Board shall review any provision of such rule or regulation—

. . . .

(B) on the granting by the Board, in its sole discretion of any petition for such review filed with the Board by any interested person, after consideration of the petition by the Board;

5 U.S.C. § 1204(f)(1) (1994).

■ Ordinarily, the Board could be expected to decide questions relating to OPM's rules and regulations in connection with its review of adverse actions taken against individual employees that involve a particular rule or regulation. In section 1204(f)(1)(B), however, Congress explicitly authorized the Board to review directly any provision of any OPM rule or regulation. In stating that the decision whether to grant such review was in the Board's "sole discretion," Congress provided that, if the Board decided not to grant review, that would be the end of the matter, and that Board decision would not be subject to further review by this court.

For example, the Board might decline review because it concluded that the issue could be more appropriately determined in connection with review of an adverse individual personnel action. That is precisely what the Board did in the *Brooks* case, discussed further below, with regard to a petition for judicial review of OPM's implementation of 5 U.S.C. § 6303(a). In *Brooks*, the Board explained:

In determining whether to exercise its regulatory review authority, the Board considers, inter alia, the likelihood that a particular issue will be reached on appeal,

the availability of other equivalent remedies, the extent of a regulations' application to the Federal service, and the strength of the arguments against the validity of the regulation's implementation. Here, 5 U.S.C. § 3502(a)(4)(B), pertaining to RIF retention, is likely to be interpreted in a RIF appeal to the Board under 5 C.F.R. § part 351; we, therefore, do not rule specifically on that issue. Because a determination under section 6303(a)(3)(B), relating to creditable military service for annual leave purposes, is not appealable and because OPM's FPM rules are applicable to the entire federal service, we consider whether to review OPM's rules pertaining to that matter, although, as set forth above, we decline review because the arguments against the validity of the rules are unpersuasive on the merits.

*Brooks,* 59 M.S.P.R. at 211 (citation omitted).

If, however, the Board does consider the merits of the issue under the OPM rule or regulation, then its decision is subject to judicial review in this court.

■ In the present case the Board did consider the merits of the petitioners' challenges to OPM's interpretation of the term "war," but rejected those challenges because it had "considered and rejected the same arguments" in *Brooks* with regard to a petition for judicial review of OPM's implementation of 5 U.S.C. § 6303(a). The Board stated in this case:

> In *Brooks,* the Board denied a request for review of Subchapter 6, S6–1.8, and Subchapter 7, Figure 7–7, based on the same argument. The Board held that OPM's rules validly implement 5 U.S.C. § 6303(a)(3)(B). 59 M.S.P.R. at 212–15. The Board found that the language and legislative history of the Dual Compensation Act reflect that Congress did not intend to give the word "war" in 5 U.S.C. § 6303(a)(3)(B) the definition of "period of war" set out in 38 U.S.C. § 101(11). *Id.* The Board declined to consider whether the rules validly implemented 5 U.S.C. § 3502(a)(4)(B) because that provision was likely to be interpreted in a RIF appeal to the Board under 5 C.F.R. Part 351. 59 M.S.P.R. at 211. The petitioners have pre-

sented no persuasive argument that the Board's decision in *Brooks* was incorrect.

*Clark,* 68 M.S.P.R. at 397–98.

Under the subheading "Order" of its opinion, the Board simply demonstrates a rejection of the petitioners' contentions on the merits, where it states:

> Petitioners have failed to show that Subchapter 6, Section 6–1.8, and Subchapter 7, Figure 7–7, of OPM's Guide to Processing Personnel Actions violate 5 U.S.C. § 6303(a)(3)(B) and they have failed to show that OPM's rules as promulgated or implemented constitute a prohibited personnel practice under 5 U.S.C. § 2302(b)(11). The request for regulation review is therefore DENIED.

The fact that the Board's disposition of the case took the form of denial of the request for review rather than affirmance or sustaining of OPM's interpretation of the Dual Compensation Act did not make the Board's decision any less a decision on the merits or insulate it from judicial review as a matter within the Board's "sole discretion." The Board's action was similar to that of some courts of appeals that, upon upholding a decision of an administrative agency, deny or dismiss the petition for review rather than affirm the agency decision. *Compare Carter v. Immigration and Naturalization Serv.,* 90 F.3d 14 (1st Cir.1996) (denying and dismissing petition for review of Board of Immigration Appeals order) *with Ivezaj v. Immigration and Naturalization Serv.,* 84 F.3d 215 (6th Cir.1996) (affirming Board of Immigration Appeals decision).

Although the Board here denied the request for review, it did so because it rejected the petitioners' interpretation of the term "war" and accepted OPM's contrary interpretation. The Board's decision is subject to review in this court. *Cf. Abbott Lab. v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967) ("[J]udicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress."), *overruled on other grounds, Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *see also*

*Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670–73, 106 S.Ct. 2133, 2135–37, 90 L.Ed.2d 623 (1986). There is no reason to believe that in section 1204(f)(1)(B) Congress intended to cut off judicial review of a Board decision rejecting on the merits a litigant's challenge to an OPM rule or regulation.

The government contends, however, that *National Treasury Employees Union v. United States Merit Sys. Protection Bd.*, 743 F.2d 895 (D.C.Cir.1984), calls for a different conclusion. In that case the Board upheld an OPM regulation allowing "federal agencies to place 'seasonal' government employees in 'nonduty, nonpay' status without affording them the adverse action protections required by the Civil Service Reform Act of 1978 ... for federal employees 'furloughed' for thirty days or less." *Id.* at 898. In a lengthy discussion concluding that it had jurisdiction to review the Board's decision, the court stated:

> Finally [§ 1204(f)(1)(B)] provides that the [Board] has the "sole discretion" to grant review of OPM rules and regulations when the moving party is an "interested person." Unless the [Board] chooses to grant review, such interested parties will have to seek initial judicial review of OPM rules and regulations in the district court under regular [Administrative Procedure Act] procedures. The [Board] will, therefore, theoretically be able to control whether the district courts or the courts of appeals will review challenges to the facial invalidity of OPM rules and regulations through its own unreviewable power to grant or deny administrative review.

*National Treasury Employees Union*, 743 F.2d at 907–08.

That statement was dictum. It did not address the issue in this case: the reviewability of a Board decision that rejected on the merits a challenge to the OPM Guide, and that therefore denied the request for review. The dictum in *National Treasury Employees Union* sheds no light on the issue we decide.

### III.

Congress enacted the Dual Compensation Act in 1964 because of concern that federal civilian employees who were retired members of the military had an unfair advantage over non-veteran civilian employees. *See* S.Rep. No. 935, 88th Cong., 2d Sess. 6–7 (1964), *reprinted in* 1964 U.S.C.C.A.N. 2834, 2839–40. The Act also restricted the use of prior military service in determining a civilian employee's rights and benefits. *See id.* As noted, 5 U.S.C. §§ 3502(a) and 6303(a) provide that, for purposes of reduction-in-force rights and annual leave calculations, a civilian employee who is a retired member of the military shall receive credit for active military service

> during a war, or in a campaign or expedition for which a campaign badge has been authorized.

5 U.S.C. §§ 3502(a) & 6303(a).

The Act does not define the term "war." In its personnel guide, however, OPM has construed the term to cover only those armed conflicts for which Congress declared war, i.e., World Wars I and II. The effect is that OPM will credit prior military service not performed in a congressionally-declared war only if the service was performed in a campaign or expedition for which a campaign badge was authorized. Since the petitioners' service during the Vietnam conflict was not performed in such a campaign or expedition—they did not serve in Southeast Asia— OPM does not credit that service in determining their reduction-in-force retention rights and annual leave.

On its face, the statute draws a sharp and clear distinction between service "during a war" and service in specified campaigns or expeditions. The necessary implication is that the latter kind of service was not performed during a "war," as the statute uses that term. Otherwise, the latter category would be unnecessary.

Congress provided no definition of "war" in the Dual Compensation Act. Nothing in the legislative history of the Act sheds light on the question of whether the term, as used in 5 U.S.C. §§ 3502(a) and 6303(a), was intended to apply to armed conflicts other than the two World Wars. *See* S.Rep. No. 935, 88th Cong., 2d Sess. (1964), *reprinted in* 1964 U.S.C.C.A.N. 2834.

Congress first used language nearly identical to the phrase "during a war, or in a campaign or expedition for which a campaign badge has been authorized" in the Veterans' Preference Act of 1944, Pub.L. No. 78–359, § 2, 58 Stat. 387, 388, which could not have included the Vietnam Era. Although that act later was amended to allow coverage for certain post-World War II service, *see* Act of July 14, 1952, Pub.L. No. 82–536, 66 Stat. 626, no such amendment was made for the benefit of Vietnam veterans. This lack of Congressional action supports OPM's interpretation of the language to include only the two world wars for which Congress declared war. *See generally, Brooks,* 59 M.S.P.R. at 214–15. Furthermore, contrary to the petitioners' claim, OPM's interpretation of the term "war" in the Dual Compensation Act accords with its interpretation of the Veterans' Preference Act. *See* OPM, Guide to Processing Personnel Actions 6–14 (1995) (defining creditable wartime service and cross-referencing Figure 7–7, which defines "war" for veterans' preference purposes).

The petitioners alternatively argue that the term "war" in the Dual Compensation Act should be given the same meaning "period of war" has in 38 U.S.C., the title governing "all of the laws administered by the Veterans Administration." Act of September 2, 1958, 72 Stat. 1105, 1105. Congress has periodically amended that title to add new conflicts to the definition "period of war," including Korea, Vietnam and the Persian Gulf. *See* 38 U.S.C. § 101(11). Title 38, however, deals with "[t]he laws relating to veterans' benefits," Act of September 2, 1958, 72 Stat. at 1105. The Dual Compensation Act, in contrast, deals with "[t]he laws relating to the employment of civilians in more than one position and the laws concerning the civilian employment of retired members of the uniformed services." Dual Compensation Act, 78 Stat. at 484. It thus is part of a totally separate statutory scheme, 5 U.S.C., which is administered primarily by OPM, not the Department of Veterans Affairs. Moreover, Congress has not amended the definition of "war" in Title 5.

The Board correctly answered the contention that the 38 U.S.C. definition should apply in the *Brooks* case, upon which, as we have noted, the agency based its decision in the present case. In *Brooks,* the Board stated:

The legislative history of the provision at issue thus clearly evidences that Congress desired to limit the annual leave accrual of those military retirees, such as the petitioners, who already received benefits as a result of their military service. The petitioners' contention that OPM has arbitrarily limited the definition of war to World Wars I and II, and that they should be entitled to creditable service for annual leave accrual purposes based on a "period of war" as defined in title 38 of the United States Code, is refuted by both the direct language of the statute and the legislative history....

. . . .

... [T]he definition of "period of war" in title 38 specifically applies by its terms only to that title. The term "war" in section 6303 is different from "period of war" and refers to World Wars I and II as demonstrated by the legislative history of that term. Title 38 represents an entirely different statutory scheme and is administered not by OPM but by the Department of Veterans Affairs for purposes different from those in title 5. Thus, the petitioners' claim must fail.

59 M.S.P.R. at 213–15 (footnote omitted).

Where Congress in the Dual Compensation Act intended to incorporate the broader title 38 definition of "period of war," it explicitly referred to that definition. Thus, the paragraph in 5 U.S.C. § 6303(a) that provides full credit for military service where military retirement was based upon disability incurred in the line of duty specifically incorporates the definition of "period of war" in 38 U.S.C. § 101 as the basis for such coverage.

In sum, OPM acted within its broad discretion to define and apply the terms of the statutes it administers, *see Horner v. Jeffrey,* 823 F.2d 1521, 1531 (Fed.Cir.1987) ("The long-standing interpretation placed on a statute by the agency charged with its administration should be followed unless there are

compelling indications that it is wrong."); when it provided in its personnel guide that "war" as used in the Dual Compensation Act provisions at issue here means a congressionally-declared war. Under *Chevron, U.S.A. Inc.v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984), OPM's interpretation of the statute is entitled to substantial deference. The Board in this case properly rejected the petitioners' challenge to OPM's interpretation of the term.

## CONCLUSION

The decision of the Merit Systems Protection Board denying petitioners' request for review is

*AFFIRMED.*