**FEDERAL AIR MARSHALS(FAM), FAM 1 through FAM 1096, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 06–233.

United States Court of Federal Claims.

Nov. 30, 2006.

Stephen G. Seliger, Chicago, Illinois, attorney of record for plaintiffs, Federal Air Marshals (FAM) FAM 1 through FAM 1096, and Joel M. Hellman and James G. Bradtke, of counsel.

Timothy P. McIlmail, Department of Justice, Washington, D.C., with whom was Assistant Attorney General Peter D. Keisler, for

defendant. David M. Cohen, Director and Kathryn A. Bleecker, Assistant Director.

## OPINION & ORDER

FUTEY, Judge.

This case is before the court on defendant's Motion To Dismiss pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief may be granted. Plaintiffs, who are Federal Air Marshals ("FAM"), seek back pay and other relief because they allege defendant did not pay them overtime compensation for working more than forty hours per workweek pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 207(a)(1) (2000) ("FLSA"). Defendant claims that FLSA does not apply to FAMs because the Federal Aviation Administration Revitalization Act of 1995, 49 U.S.C. § 40122(g) (2000) ("FAARA") exempts plaintiffs' original employer, the Federal Aviation Administration ("FAA"), from FLSA. Plaintiffs dispute this claim. Defendant also submits a RCFC 12(e) Motion For A More Definite Statement, requesting that plaintiffs identify in their complaint specific pay periods during which they allege defendant underpaid them.

### Factual Background

Over the past five years, plaintiffs, a total of 1,096 FAMs, have been under the auspices of a number of agencies. Plaintiffs allege that they worked for the Department of Transportation ("DOT") under the FAA from September 2001 until February 2002, the DOT's Transportation Security Administration ("TSA") from February 2002 until November 2003, the Bureau of Immigration and Customs Enforcement under the Department of Homeland Security ("DHS") from November 2003 to October 2005, and the TSA under DHS from October 2005 to present. Plaintiffs claim that defendant through these various administrative agencies required all FAMs, including plaintiffs, to work substantially in excess of forty hours per workweek during most workweeks since September 2001, without adequately compensating them pursuant to FLSA.

### Discussion

The court will grant a RCFC 12(b)(6) motion only if it appears beyond a doubt that plaintiffs have failed to allege facts sufficient to support their claim. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Mostowy v. United States,* 966 F.2d 668, 672 (Fed.Cir.1992). In ruling on a RCFC 12(b)(6) motion to dismiss, the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to plaintiff. *Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed. Cir.1991)). Nevertheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). "[L]egal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." *Blaze Constr., Inc. v. United States,* 27 Fed.Cl. 646, 650 (1993) (internal quotations omitted).

Plaintiffs claim that defendant violated FLSA by failing to compensate FAMs for hours worked in excess of forty hours per workweek under FLSA's required rates, which mandate that

> [e]xcept as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is ... employed in an enterprise engaged in commerce ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). FLSA expressly includes public agencies as employers. 29 U.S.C. § 203(d)(1999).

Defendant avers that FLSA does not apply to FAMs because FAARA exempts the FAA, FAMs' original employer, from having to follow FLSA. FAARA provides:

> notwithstanding the provisions of title 5 and other Federal personnel laws, the [FAA] shall develop and implement, not later than January 1, 1996, a personnel

management system ... that addresses the unique demands on the agency's workforce. Such a new system shall, at a minimum, provide for greater flexibility in the hiring, training, compensation, and location of personnel.

49 U.S.C. § 40122(g). Defendant claims that FLSA's overtime compensation requirement is a Federal personnel law under FAARA, and by simply permitting the FAA to create a personnel management system "notwithstanding" such laws, FAARA exempts the FAA from any federally mandated personnel laws irrespective of the terms of the new management system.

## A. FLSA

FLSA's plain language indicates that it applies to FAMs. "In construing a statute or regulation, we commence by inspecting its language to ascertain its plain meaning." *Diefenderfer v. Merit Sys. Prot. Bd.*, 194 F.3d 1275, 1278 (Fed.Cir.1999) (citations omitted). "If the terms of the statute or regulation are unambiguous, no further inquiry is usually required." *Id.* "When we find the terms of a statute unambiguous, judicial inquiry should be complete except in rare and exceptional circumstances." *Freytag v. Comm'r*, 501 U.S. 868, 873, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991). The court must "giv[e] due regard to the plain meaning of statutory language and the intent of Congress" when interpreting FLSA and its numerous, specific exceptions. *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095 (1945). These exemptions only apply when the employment falls "plainly and unmistakably within [the exceptions'] terms and spirit." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960).

FLSA clearly indicates that employers must pay their employees additional compensation when they work more than forty hours per workweek. Even though FLSA lists numerous exceptions, the court cannot find one that explicitly applies to FAMs, the FAA, or airline industry employees. Although FLSA specifically exempts "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the

provisions of section 31502 of Title 49," 29 U.S.C. § 213(b)(1)(2000), there is no mention of the FAARA provisions.

Congress used specific, detailed language in describing exceptions to FLSA. For example, during the same year it enacted FAARA, Congress amended FLSA to include exceptions for "any employee who is a computer systems analyst, computer programmer, software engineer, or other similarly skilled worker, whose primary duty" meets one of a very specific list of duties, and "who, in the case of an employee who is compensated on an hourly basis, is compensated at a rate of not less than $27.63 an hour." 29 U.S.C. § 213(b)(17). Two years later, Congress included exceptions for farmers as specific as "hand harvest laborer[s] ... paid on a piece rate basis in [operations] which ha[ve] been, and [are] customarily and generally recognized as having been, paid on a piece rate basis in the region of employment[.]" 29 U.S.C. § 213(a)(6). When composing FLSA, Congress has diligently included specific, express exceptions within the statute itself. It has not, however, included any exemption relevant to plaintiffs. Therefore, the complaint cannot be dismissed at this point in the litigation because defendant has not shown that, as a legal matter, plaintiffs are exempt from FLSA.

## B. FAARA's Plain Language

Defendant argues that FAARA itself exempts FAMs from FLSA. FAARA allows the FAA to establish its own personnel management system "notwithstanding the provisions of title 5 and other Federal personnel laws." 49 U.S.C. § 40122(g). Defendant argues that this exempts the FAA from any personnel right or obligation enacted under Federal law applying to all employers, both public and private, such as FLSA. Plaintiffs contend that the phrase refers to laws exclusively pertaining to Federal personnel. These include positions under title 5 of the United States Code, which generally sets out civil service laws administered through the Office of Personnel Management, and title 49, which relates specifically to DOT personnel and includes FAARA.

The central issue here is determining the meaning of "Federal personnel laws." In general, courts have determined that "Federal personnel law" or "Federal personnel statute" are those laws that apply specifically to persons who work for the government, not private employees, and are not universally applicable. *See, e.g., McCormick v. Dept. of Air Force*, 307 F.3d 1339, 1342 (Fed.Cir. 2002); *Clark v. Office of Pers. Mgmt.*, 95 F.3d 1139, 1140 (Fed.Cir.1996); *Rodriguez v. Kantor*, 1998 WL 546098, *8 (4th Cir.1998) (unpublished) (differentiating "federal personnel law" from general applicable labor law); *Devine v. Pastore*, 732 F.2d 213, 217 (D.C.Cir.1984) (using "federal personnel laws" terminology to determine appropriate federal employee disciplinary measures). Although defendant contends that the FLSA is a "Federal personnel law," it does not cite any case that refers to a generally applicable labor statute as such. The court, therefore, finds that FLSA is not a "Federal personnel law," but a universally applicable employment law that, absent a specific exemption, relates to federal employees.

Moreover, Congress intended to give the FAA more flexibility in managing personnel "by exempting the agency from most personnel and procurement laws that apply to other government entities[.]" H.R. REP. No. 104–475, pt. 1, at 25 (1996). This indicates that it likely intended to relieve the FAA of obligations placed upon government agencies specifically, not those imposed upon all employers in both the public and private sectors. Thus, both FAARA's plain language and legislative history connote that the statute only overrides conflicting laws applying specifically to Federal personnel, not all employees in both public and private employment. Therefore, it cannot be found that, as a matter of law, FAARA allows the FAA to disregard FLSA in its entirety absent regulations specifically excluding categories of FAA workers from FLSA requirements.

**C. FAARA's Legislative History**

FAARA's legislative history does not indicate that Congress intended to exempt FAMs from overtime compensation requirements. Before FAARA, DOT solely regulat-

ed FAA personnel duties, but did not have the authority to shape its own employment structure. 49 U.S.C. § 106 (amended 1994); *see* 49 U.S.C. § 323(a). Congress enacted FAARA in 1996 to give the FAA increased independence and authority to accommodate the airline industry's tremendous growth, in part by giving it "the flexibility to develop its own procurement and personnel systems best suited to its unique mission." H.R. REP. No. 104–475, pt. 1, at 31. Previously, copious DOT, as well as general Federal personnel laws restricted the FAA to the extent that they "create[d] an environment where it [was] impossible to recruit, pay, and reward employees properly." H.R. REP. No. 104–475, pt. 1, at 30. FAARA gave the FAA the ability to regulate and reward its personnel more effectively "by exempting the agency from most personnel and procurement laws that apply to other government entities and permitting the FAA to develop its own personnel and procurement systems, subject to Congressional review." H.R. REP. No. 104–475, pt. 1, at 25.

There is no indication, however, that Congress enacted FAARA to exclude the FAA from any and all employment regulation; it intended to give the FAA the opportunity to replace standing regulations with its own specific personnel management system. Congress provided that FAARA's provisions "relating to differential pay, shall take effect on the date the Federal Aviation Board begins implementation of the personnel management system for the Federal Aviation Administration under section 1314(d)(2) of title 49, United States Code" and that "[a]ll employee rights and union contracts are to remain in effect while the new personnel system is being developed." H.R. REP. No. 104–475, pt. 1, at 24, 40. Congress specifically legislated to avoid the FAA's operating without personnel regulation even for the temporary time period during which it formulated its new management system.

The FAA did establish a new personnel system pursuant to FAARA, which defendant does not provide in its motion. Plaintiffs, however, quote the FAA's officially published Performance Management System in their brief, which states:

Based upon the provisions of FLSA, there are two categories of employees in the FAA (and throughout the Federal service): "exempt" employees (those NOT subject to the FLSA) and "nonexempt" employees (those who ARE subject to the FLSA). The determination of status, "exempt" or "nonexempt," of each employee has been made and is reflected on T & A Reports for each employee.

FAA Human Resource Policy Manual, Compensation; *available at* http://www.faa.gov/ ahr/super/pay/index.cfm# fair. This indicates that the policy the FAA adopted pursuant to FAARA not only provided protection for designated employees for overtime compensation; it explicitly acknowledged its compliance with FLSA. This court must explore the FAA's Performance Management System more thoroughly before it can rule on whether the FAA followed its own procedures.

Even if the FAA does not have to pay its FAMs overtime compensation, plaintiffs still would have a valid claim for overtime pursuant to FLSA at least for the years they were employed by the DHS through the Bureau of Immigration and Customs Enforcement from November 2003 to October 2005, and probably subsequently during their time with the TSA. Defendant does not sufficiently discuss this issue in its motion. Because this court may only grant a 12(b)(6) motion when it appears beyond a doubt that plaintiffs have failed to allege facts sufficient to support their claim, *Conley,* 355 U.S. 41 at 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80, and in this case plaintiffs' complaint contains sustainable claims, we must deny defendant's motion to dismiss for failure to state a claim upon which relief may be granted.

**D. Motion For A More Definite Statement**

Defendant also requests that this court grant its Motion For A More Definite Statement and require plaintiffs to specify during which pay periods they received insufficient compensation. RCFC 12(e) provides, "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." RCFC 12(e). But plaintiffs must only include in their pleading "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment of the relief the pleader seeks." RCFC 8(a).

Plaintiffs have adequately pleaded their claim for overtime compensation for the years during which defendant failed to comply with FLSA. Considering defendant has control over these records itself, it can easily access those documents during discovery and better establish the time periods in question. Therefore, the court denies defendant's Motion For A More Definite Statement.

### *Conclusion*

For the above-stated reasons, defendant's Motion To Dismiss and Motion For A More Definite Statement are both DENIED. The parties shall submit a Joint Status Report concerning further proceedings in this case by December 21, 2006.

IT IS SO ORDERED.